## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS GAYDOSH,

      Plaintiff,                  Case No.

v.                                    Hon.

ROUSH ENTERPRISES.

      Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Thomas Gaydosh ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, and hereby states the following:

## INTRODUCTION

1.    Plaintiff Thomas Gaydosh served a Senior Program Manager at Defendant Roush Enterprises.  When his Complex Post-Traumatic Stress Disorder became unmanageable in late 2024, he followed the proper channels by disclosing his condition to Human Resources in good faith, submitted a formal accommodation

request supported by medical documentation, and took a brief approved leave under the Family and Medical Leave Act.  Upon returning to work, he found himself excluded from meetings, stripped of his core responsibilities, and instructed not to contact stakeholders.  Two days after Defendant approved his accommodation request, Defendant terminated his employment, claiming his position had been "eliminated."  Five months later, Defendant advertised for his exact position.  This lawsuit seeks redress for Defendant's willful violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

## JURISDICTION AND PARTIES

2.      Plaintiff is an individual residing in Manchester, Washtenaw County, Michigan.

3.      Defendant is a domestic for-profit corporation that transacts business in Livonia, Wayne County, Michigan.

4.      The U.S. District Court for the Eastern District of Michigan has federal questions jurisdiction over his claims under the ADA and the FMLA, pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's claim under the PWDCRA pursuant to 28 U.S.C. § 1367(a), as that claim arises from the same nucleus of operative facts.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b), as it is the district in which a substantial part of the events giving rise to Plaintiff's claims occurred.

6. Plaintiff filed a charge of discrimination with the EEOC and received a Notice of Right to Sue on February 2, 2026.

## FACTUAL ALLEGATIONS

7. Plaintiff suffers from Complex Post-Traumatic Stress Disorder ("CPTSD").

8. Plaintiff began his employment with Defendant in November 2023.

9. Plaintiff performed his duties and responsibilities with a high degree of competence since his initial hiring.

10. In late 2024, Plaintiff began suffering from a significant mental health crisis arising from his CPTSD.

11. Plaintiff's condition had an immediate and significant impact on his daily life but did not affect his ability to perform his job duties as Senior Program Manager.

12. Plaintiff worked diligently despite his waning mental health until he could no longer bear it.

13. In early March 2025, Plaintiff met with Megan Mazurkiewicz from the Human Resources department to disclose his ongoing condition and to discuss potential accommodations.

3

14.    Ms. Mazurkiewicz was initially supportive and encouraged Plaintiff to apply for accommodations.

15.    Plaintiff applied for accommodations on March 18, 2025, and included supporting documents from his medical provider.

16.    Specifically, Plaintiff's medical provider requested accommodation in the form of intermittent paid time off or leave under the FMLA to address "flare-ups" from his condition, allowing Plaintiff to call his wife during a flare-up during working hours, direct communication and clarity regarding work deadlines, and permission to record voice memoranda.

17.    The following day, Plaintiff applied for protected leave under the FMLA to allow him to undergo treatment for his condition. Plaintiff's FMLA certification described his condition as "chronic" and "permanent or long-term."

18.    Plaintiff sent his application for FMLA leave to Defendant's Benefits Coordinator, and Defendant quickly approved his application.

19.    Plaintiff took only three weeks off from work to recover before he returned to work on March 28, 2025.

20.    While Plaintiff was on leave, he received an email attaching his first performance review in a significant period.

21.    Notably, Plaintiff's review downplayed his outstanding feedback from Defendant's customers and instead focused on the effects of his mental health

condition on his work. The timing of this review, delivered while Plaintiff was on protected leave, was not coincidental.

22. When Plaintiff returned to work, he had hoped to resume where he had left off. Prior to his leave, Plaintiff was involved in a significant project and was excited to contribute.

23. However, upon his return to work, Plaintiff's Engineering Manager Matt Morad ceased giving Plaintiff work, and his colleagues went out of their way to avoid Plaintiff.

24. Plaintiff was excluded from meetings, instructed not to contact stakeholders, and stripped of his core job responsibilities, all without explanation.

25. This conduct continued until the following week when Plaintiff met with Ms. Mazurkiewicz and Mr. Morad to discuss his disability accommodations.

26. Defendant had approved a modest set of accommodations, including allowing Plaintiff to video call his wife in the event of flare ups, and allowing him to use artificial intelligence tools to take notes during meetings.

27. On April 4, 2025, only two days after his accommodation had been approved on April 2, 2025, Plaintiff was called into a second meeting with Ms. Mazurkiewicz and Mr. Morad in which he was told that his position had been eliminated.

28. However, prior to his FMLA leave and his accommodation request,

Plaintiff was inundated with work.

29. Prior to his disclosure of his disability, Plaintiff received positive verbal feedback from management throughout his tenure and was never formally placed on notice that his employment was in jeopardy.

30. Plaintiff engaged in protected activity when he informed Defendant of his need for leave and through his application for leave.

31. Defendant was on notice of Plaintiff's disability and his exercise of protected rights before making the decision to terminate his employment.

32. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 2, 2025.

33. On September 8, 2025, Plaintiff was informed that Defendant was hiring for a Senior Program Manager, Plaintiff's exact position.

34. Plaintiff's role was not eliminated by Defendant; rather, Plaintiff was terminated due to his disability and his exercise of protected rights under the ADA and the FMLA, as evidenced by Defendant advertising for Plaintiff's exact position and thereafter hiring a new employee for his position.

35. Defendant wrongfully classified Plaintiff's termination as a position elimination.

36. But for Plaintiff's disability and his exercise of protected rights under the ADA and the FMLA, his employment would not have been terminated.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

37.     Plaintiff incorporates by reference the foregoing paragraphs.

38.     Defendant was an "employer" with "15 or more employees" during all relevant times within the meaning of 42 U.S.C. § 12111(5).

39.     Plaintiff was an "employee" (*i.e.*, "an individual employed by an employer") during all relevant times within the meaning of 42 U.S.C. § 12111(4).

40.     Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

41.     Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

42.     Plaintiff was otherwise qualified for his position.

43.     Defendant discriminated against Plaintiff because of his disability, in violation of the ADA, by terminating his employment on April 4, 2025.

44.     Defendant's proffered justification for Plaintiff's termination is pretextual.  Defendant advertised for Plaintiff's exact position within months of his discharge, demonstrating that his position as never genuinely eliminated.

45.     Defendant further failed to engage in a meaningful, good-faith interactive process as required by the ADA.  Rather than exploring reasonable alternatives to termination, Defendant approved a limited set of accommodations on April 2, 2025, and terminated Plaintiff two days later, without engaging in any genuine dialogue about Plaintiff's ongoing needs.

46.     Defendant treated non-disabled employees more favorably and replaced Plaintiff with a non-disabled employee.

47.     Defendant's actions were knowing and willful.

48.     Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

49.     Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA

50.     Plaintiff incorporates by reference the foregoing paragraphs.

51.     Plaintiff engaged in protected activity under the ADA when he disclosed his disability to Defendant's Human Resources department, submitted a formal request for accommodation supported by medical documentation from his treating therapist, and applied for leave in connection with his disability.

52.     Defendant was aware of Plaintiff's protected activity.

53.     Defendant terminated Plaintiff's employment in relation for his

exercise of his rights under the ADA.

54. A causal connection exists between Plaintiff's protected activity and his termination. Plaintiff was terminated just two days after Defendant formally approved his accommodation request and within one week of his return from protected medical leave.

55. The temporal proximity is evidence of retaliatory intent.

56. Defendant cannot demonstrate that it planned the elimination of Plaintiff's position before his protected activity. Plaintiff was inundated with work immediately prior to his leave, and Defendant's own subsequent posting for the same position confirms that the stated justification for his termination was a pretext for retaliation.

57. Defendant's actions were knowing and willful.

58. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of Defendant's unlawful conduct.

59. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of an impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and

9

proximate result of Defendant's unlawful conduct.

## COUNT III
## DISABILITY DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE PWDCRA

60. Plaintiff incorporates by reference the foregoing paragraphs.

61. At all relevant times, Defendant was an "employer" within the meaning of the PWDCRA, MCL § 37.1101, *et seq*.

62. Plaintiff has a "disability" within the meaning of the PWDCRA in that his CPTSD constitutes a determinable physical or mental characteristic that substantially limits one or more of Plaintiff's major life activities.

63. Plaintiff was a qualified individual who, with or without reasonable accommodation, was able to perform the essential functions of his position as Senior Program Manager.

64. Defendant discriminated against Plaintiff on the basis of his disability, in violation of the PWDCRA, by terminating his employment and by failing to accommodate his disability in good faith.

65. Defendant further retaliated against Plaintiff for requesting accommodations and for opposing Defendant's discriminatory conduct, in violation of the PWDCRA.

66. Defendant's preferred reason for Plaintiff's termination is pretextual.

67. Defendant's actions were knowing and willful.

68.     As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physician anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

69.     As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT IV**
**RETALIATION IN VIOLATION OF THE FMLA**

70.     Plaintiff incorporates by reference the foregoing paragraphs.

71.      Plaintiff dutifully and professionally performed his duties as a Senior Program Manager.   It was not until taking protected FMLA leave that his employment was terminated.

72.     Plaintiff's mental health condition is a "serious health condition" because it requires continuing treatment by a health care provider.  29 U.S.C. § 2611(11).

73.     Plaintiff placed Defendant on notice that he required protected medical leave under the FMLA.  "[T]o invoke the protection of the FMLA, an employee

must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998).

74. Defendant terminated Plaintiff's employment due to the exercise of his rights under the FMLA.

75. A causal connection exists between the exercise of Plaintiff's protected right and his termination. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

76. Defendant cannot set forth evidence that it planned the elimination of Plaintiff's job before his protected medical leave.

77. By terminating Plaintiff's employment immediately following his protected return to work date, Defendant failed to comply with 29 U.S.C. § 2614(a)(1)(A)-(B) which states that an employee returning from medical leave has the right to "be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

78. Defendant's actions in violation of the FMLA were knowing and willful.

79.    As a direct and proximate result of Defendant's retaliation against Plaintiff for exercising his FMLA rights, Plaintiff suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

80.    As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work in the future.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.    Compensatory damages for monetary and non-monetary loss, including lost wages, salary, employment benefits, and other compensation denied or lost by reason of Defendant's violations;

B.    Liquidated damages as provided under the FMLA, 29 U.S.C. § 2617(a);

C.    Exemplary and punitive damages;

D.    Prejudgment interest;

E.    Attorneys' fees and costs; and

F.    Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

 */s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com

Date: April 14, 2026                              grant@hurwitzlaw.com

14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS GAYDOSH,

       Plaintiff,

v.

ROUSH ENTERPRISES.

       Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

## JURY DEMAND

Plaintiff Thomas Gaydosh, by and through his attorneys, HURWITZ LAW

PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause

of action.

                      Respectfully Submitted,

                      HURWITZ LAW PLLC

                      */s/ Noah S. Hurwitz*
                      Noah S. Hurwitz (P74063)
                      Grant M. Vlahopoulos (P85633)
                      *Attorneys for Plaintiff*

340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com
Date: April 14, 2026                    grant@hurwitzlaw.com

2